UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME WILLIAM BORTHWELL,

    Petitioner,                        Civil No. 5:05-60149
                                             HONORABLE JOHN CORBETT O'MEARA
v.                                        UNITED STATES DISTRICT JUDGE

ANDREW JACKSON,

    Respondent,
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Jerome Borthwell, ("petitioner"), presently confined at the Mound Road Correctional Facility in Detroit, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for first-degree murder, M.C.L.A. 750.316; second-degree murder, M.C.L.A. 750.317; and felony-firearm, M.C.L.A. 750.227b. For the reasons stated below, the petition for writ of habeas corpus is **DENIED**.

### I. Background

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court. Petitioner's convictions arose from the shooting deaths of Darren Butler and Twanseye Pitts on April 4, 1997, at an outdoor party in the Parkside Housing Project in Inkster, Michigan.

Salina Newell was the primary witness against Petitioner. Newell testified that she

1

had known Petitioner for five years and had a daughter with him. On April 4, 1997, Newell first saw Petitioner at her house in Inkster, Michigan and later that evening at the Parkside Housing Project. Newell testified that there were a large number of people in the parking lot drinking, talking, laughing, and dancing. Petitioner got into an argument with Newell, before leaving the project in a car.

Newell left the area herself, but returned to the party after buying some cognac. Upon her return to the projects, Newell observed Darren Butler, Twansaye Pitts and Geisha Garner. Newell sat in her car.

After 30-60 minutes, Newell heard a number of gunshots and ducked down in her car for protection. Pitts was standing by the rear of her car at the time. All of the gunshots sounded the same. After hearing the shots, Newell saw Petitioner with an AK-47 gun. Newell then observed Petitioner pursue Butler while shooting the AK-47 at him. Newell and several other people then left the area. Newell testified that time elapsed from the first round of gunshots and the second group of gunshots which were fired by petitioner when he was chasing Butler. Newell denied seeing anyone else with a weapon in the parking lot at the time of the shooting.

Several days later, Newell encountered Petitioner at a motel. Petitioner informed Newell that he had leave, telling her that, "You know why."

Newell admitted that when she was arrested several weeks later on an armed robbery charge, she initially told the police that she was not present in the parking lot at the time of the shooting and knew nothing about the incident. Newell indicated that she

2

ultimately told the police that petitioner was the shooter, because she felt threatened by the police in that they told her that she would receive 15 to 20 years in prison for the armed robbery charge. Newell testified that the police promised her that in exchange for her statement, she would not receive a 15 to 20 year prison term. Newell ultimately plead guilty to a charge of unarmed robbery and received a sentence of 18 months to 10 years. Newell, however, denied that she had been promised any plea bargain by the prosecution in exchange for her testimony against petitioner, although she acknowledged that someone from the prosecutor's office promised her that a statement would be given on her behalf to the parole board for parole purposes. Newell admitted that she told the police that she witnessed the murders to help herself and not the police and that her motivation in doing so was to avoid going to prison for fifteen to twenty years.

Newell was further impeached at trial with her failure to voluntarily come forward to the police, her bad feelings towards petitioner due to their breakup, her own felony conviction, and the fact that she had been smoking marijuana and drinking alcohol on the night in question.

The preliminary examination testimony of Geisha Garner was read into evidence after the trial court determined that Garner was unavailable to testify at petitioner's trial. In her preliminary examination testimony, Garner admitted to being in the parking lot of the housing project at the time of the shooting. Garner testified that petitioner was not present in the parking lot at the time of the shooting. Although Garner admitted that she had made a statement to the police in which she identified petitioner as being the shooter,

3

Garner recanted her statement to the police, indicating that it was not truthful. Garner denied seeing petitioner in the parking lot with a gun that night. Although she had seen petitioner at another location earlier that night, Garner indicated that he did not have a weapon in his possession at that location. Garner emphasized several times that the portion of her statement to the police in which she identified petitioner as the shooter was untrue.

The police officer who took Garner's statement testified that Garner had informed him that petitioner had been responsible for shooting Butler and Pitts.

The medical examiner determined from an autopsy that Twansaye Pitts died from the injuries he sustained from three gunshot wounds, one to the neck, one to the forearm, and one to the buttock. The medical examiner determined from an autopsy performed upon Darren Butler that he died from the injuries he sustained from nine gunshot wounds, four to the front and five to the back and side.

Petitioner's conviction was affirmed on appeal. *People v. Borthwell,* No. 243976 (Mich.Ct.App. May 6, 2004); *lv. den.* 471 Mich. 949, 690 N.W.2d 105 (2004). Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

> I. Petitioner was deprived of his constitutional right to due process and a fair trial where the prosecutor failed to correct or disclose Ms. Newell's deal from the prosecution for her false testimony concerning the extent and consideration for that testimony.
>
> II. Petitioner was deprived of his right to a fair trial when the motion for a directed verdict as to the first-degree murder charges should have been granted, as the prosecution failed to present legally sufficient evidence that Petitioner premeditated the murders of either the decedent, or was responsible

4

for the death of Mr. Butler.

III. The trial court erred reversibly, over defense objection, that the prosecution had used due diligence in seeking the appearance of witness Geisha Garner, and then allowing her recorded testimony from the preliminary examination to be read to the jury which deprived Petitioner of his Sixth Amendment right to confrontation.

IV. Petitioner was deprived of his Sixth Amendment guarantee to effective assistance of counsel where his trial attorney failed to object to the improper methods used by the prosecutor of presenting illegal substantive evidence and improper arguments.

V. Petitioner was deprived of his due process right to a fair trial where the prosecutor intentionally presented the testimony of a recanting witness in order to establish a foundation for impeachment of that witness with a prior inconsistent statement, and then improperly argued to the jury that the prior statement was substantive evidence of guilt, and argued that Petitioner fled Michigan after the incident after the court had already ruled that insufficient evidence existed as to a flight instruction.

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has

on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

**A. The motion to file a supplemental pleading.**

Petitioner has filed a motion to file a supplemental pleading in addition to the petition and the reply brief that he filed. In his motion, petitioner contends that he has additional caselaw which will support his first claim. Petitioner, however, does not cite to any of these cases in his motion. Petitioner's motion is denied because he has failed to provide a reason for the necessity of such a second reply at this late date. *See Garner v. Morales,* 237 F.R.D. 399, 400 (S.D. Tex. 2006). Finally, because the respondent's answer and the Rule 5 materials provide a conclusive legal response to the petition for writ of habeas corpus, no purpose would be served by granting petitioner additional time to file a supplemental reply brief. *See e.g. U.S. ex rel. Linton v. Battaglia,* 416 F. Supp. 2d 619, 623 (N.D. Ill. 2006).

**B. Claim # 1. The perjured testimony claim.**

Petitioner first contends that he was deprived of a fair trial when the prosecutor permitted Newell to testify falsely to the effect that the prosecutor did not offer her any

6

plea bargain in exchange for her testimony. [1]

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F. 3d 486, 517-18 (6th Cir. 2000). A habeas petitioner has the burden of establishing a *Giglio* violation. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003). A habeas petition should be granted if perjury by a government witness undermines the confidence in the outcome of the trial. *Id.*

In this case, the prosecutor's failure to disclose any alleged plea bargain in which

---

[1] Contrary to respondent's contention, petitioner's first claim was exhausted with the state courts, because he attempted to raise this claim in a motion to remand with the Michigan Court of Appeals, which that court denied. *People v. Borthwell,* No. 243976 (Mich.Ct.App. October 29, 2003)(Talbot, J. would grant motion to remand). The Sixth Circuit has held that raising a claim or issue in a motion to remand with the Michigan Court of Appeals is sufficient to present a claim to the Michigan Court of Appeals for the purpose of exhausting a claim for federal habeas review. *See Elmore v. Foltz,* 768 F. 2d 773, 775 (6th Cir. 1985).

Newell agreed to testify against petitioner was not material to petitioner's conviction, where the jury was otherwise fully aware of Newell's motivation for testifying, i.e., her hope of obtaining favorable treatment in her own case. *See Williams v. Coyle,* 260 F. 3d 684, 708 (6th Cir. 2001). Newell testified that she was threatened by the police that she would go to prison for fifteen to twenty years if she didn't make a statement implicating petitioner, but was promised by the police that she would not receive a fifteen to twenty year prison term if she gave such a statement to the police. Newell admitted that she only told the police that she witnessed the shooting to aid herself and not to help the police, acknowledging that she gave the statement to avoid going to prison for fifteen to twenty years. Morever, although Newell denied that the prosecutor had offered her a plea bargain, she acknowledged that the prosecutor's office promised to give a statement on her behalf to the parole board. Because the jury knew that Newell hoped that her cooperation with the police and prosecutor would help her criminal case, they had a reason to question the veracity of her testimony. Thus, this Court does not believe that knowledge of the existence of an actual plea bargain with the prosecutor would have given the jury a greater reason to question the veracity of Newell's testimony, so as to undermine confidence in the outcome of the trial. *Id.* Petitioner is not entitled to habeas relief on his first claim.

**C. Claim # 2. The sufficiency of evidence claim.**

Petitioner next claims that the trial court erred in failing to direct a verdict of acquittal based on the insufficiency of the evidence.

8

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000)(citing to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Section 2254(d) "mandates that federal courts give deferential review to state court decisions on sufficiency of evidence claims." *David v. Lavinge,* 190 F. Supp. 2d 974, 985 (E.D. Mich. 2002)(internal citations omitted). A conviction may rest on circumstantial evidence and a federal habeas court reviewing the sufficiency of evidence to support a conviction need not rule out all possible interpretations of the circumstantial evidence. *Dell v. Straub,* 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002). A conviction may be based upon circumstantial evidence as well as inferences based upon the evidence. *Id.*

Petitioner first claims that there was insufficient evidence to establish that he was the person who actually shot the victims. Salina Newell testified that she observed petitioner in the parking lot shooting an automatic weapon and specifically chasing after Mr. Butler while firing the weapon. Newell testified that she did not observe anyone else with a weapon in the parking lot. The identity of a defendant can be inferred through circumstantial evidence. *Dell,* 194 F. Supp. 2d at 648. In the present case, there was sufficient evidence for a rational trier of fact to conclude that petitioner was the person responsible for shooting Butler and Pitts. Because there was sufficient evidence presented at trial for a rational trier of fact to conclude beyond a reasonable doubt that

9

petitioner was the perpetrator of the crime, petitioner is not entitled to habeas relief. *Id.*

Petitioner next contends that there was insufficient evidence to establish a finding of premeditation, so as to support his conviction for first-degree murder. To constitute first-degree murder in Michigan, the state must establish that a defendant's intentional killing of another was deliberated and premeditated. *Scott v. Elo*, 302 F. 3d 598, 602 (6th Cir. 2002)(*citing People v. Schollaert*, 194 Mich. App. 158; 486 N.W.2d 312, 318 (1992)). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001)(*citing to People v. Anderson*, 209 Mich. App. 527, 537, 531 N. W. 2d 780 (1995)). Premeditation may be established through evidence of the following factors:

1. the prior relationship of the parties;
2. the defendant's actions before the killing;
3. the circumstances of the killing itself;
4. the defendant's conduct after the homicide.

*Cyars v. Hofbauer,* 383 F. 3d 485, 491 (6th Cir. 2004); *People v. Anderson*, 209 Mich. App. at 527.

Under Michigan's first-degree murder statute, the interval between the thought and action should be long enough to give a reasonable person sufficient time to subject his or her actions to a "second look" in order to prove premeditation and deliberation. *Alder v. Burt,* 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003)(*citing to People v. Morrin,* 31 Mich. App. 301, 187 N.W. 2d 434 (1971)). "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the

10

victim may be sufficient to create a jury question on the issue of premeditation." *Id.* Therefore, a sufficient time lapse to provide an opportunity for a "second look" may be merely seconds, minutes, or hours or more, dependant on the totality of the circumstances surrounding the killing. *People v. Berthiaume*, 59 Mich. App. 451, 456, 229 N. W. 2d 497 (1975). Premeditation and deliberation may be inferred from the type of weapon used and the location of the wounds inflicted. *People v. Berry*, 198 Mich. App. 123, 128, 497 N. W. 2d 202 (1993). Use of a lethal weapon will support an inference of an intent to kill. *People v. Turner*, 62 Mich. App. 467, 470, 233 N. W. 2d 617 (1975).

In the present case, there was sufficient evidence for a rational trier of fact to conclude that petitioner acted with premeditation. Petitioner left the party at the projects and returned with a weapon which resembled an AK-47 assault rifle. Petitioner shot Pitts three times and Butler nine times. Pitts was hit in the neck, forearm, and buttock. Butler was shot four times in the front and five times in the back and side. Newell testified that there was an initial round of shots, a pause, and then a second round of shots. Newell also testified that petitioner chased after Butler while shooting him. A reasonable trier of fact could have inferred under the circumstances that petitioner's decision to kill the victims was premeditated and deliberate. Therefore, the Michigan Court of Appeals' determination that there was sufficient evidence to support petitioner's first-degree murder conviction was not an unreasonable application of clearly established federal law so as to entitle petitioner to habeas relief. *Scott,* 302 F. 3d at 603.

To the extent that petitioner is attacking the credibility of the witnesses to claim that the evidence is legally insufficient, petitioner would not be entitled to habeas relief. Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F. 3d 594, 618 (6th Cir. 2002)(internal citation omitted). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.* This portion of petitioner's insufficiency of evidence claim rests on an allegation of the witnesses' credibility, which is the province of the jury. Petitioner is therefore not entitled to habeas relief on this claim. *See Tyler v. Mitchell,* 416 F. 3d 500, 505 (6th Cir. 2005).

**D. Claim # 3. The Confrontation Clause claim.**

Petitioner next claims that the trial court erred in finding that Geisha Garner was unavailable to testify at petitioner's trial, so as to permit the prosecution to introduce her testimony from petitioner's preliminary examination into evidence. Petitioner claims that the admission of Garner's testimony violated his right to confrontation.

In rejecting this claim, the Michigan Court of Appeals found that the prosecution and the police had exhibited due diligence to locate Garner, so as to render her unavailable to testify at petitioner's trial. The Michigan Court of Appeals further found that petitioner was not prejudiced by the absence of this witness, as Garner's testimony was exculpatory to petitioner. *Borthwell,* Slip. Op. at * 3.

12

The Confrontation Clause of the Sixth Amendment "has long been read as securing an adequate opportunity to cross-examine adverse witnesses." *See United States v. Owens,* 484 U.S. 554, 557 (1988). In the present case, the admission of Garner's preliminary examination testimony at petitioner's trial did not violate petitioner's Sixth Amendment rights, because Garner testified that petitioner was not the shooter, was not even present in the parking lot at the time of the shootings, and had been unarmed when she had encountered petitioner at another location earlier in the evening.

"[T]he Sixth Amendment only guarantees a defendant the right to confront 'witnesses against him.'" *U.S. v. Riascos-Suarez*, 73 F. 3d 616, 626 (6th Cir. 1996)(holding that the Confrontation Clause was not violated because the witness's testimony was not admitted "against" the defendant); *See also United States v. Kindig*, 854 F. 2d 703, 709 (5th Cir. 1988)(defendant's right of confrontation in regard to codefendant did not arise in joint trial, where codefendant's testimony was exculpatory as to defendant)*; United States v. Crockett,* 813 F. 2d 1310, 1313 (4th Cir. 1987)(defendant's Confrontation Clause rights not violated when court refused to allow him to cross-examine codefendant, who gave exculpatory testimony, as "[T]he right of confrontation does not give defendants a plenary right to elicit friendly testimony"). Because Garner's preliminary examination testimony was exculpatory, she was not an adverse witness against petitioner, therefore, petitioner had no Sixth Amendment right of confrontation to assert. *Riascos-Suarez*, 76 F. 3d at 626.

Moreover, the mere fact that the prosecutor was permitted to impeach Garner at

the preliminary examination with her prior statement to the police which incriminated petitioner would not violate petitioner's right to confrontation, in light of the fact that Garner testified favorably for petitioner at the preliminary examination and recanted her prior statement to the police. *See Nelson v. O'Neil,* 402 U.S. 622, 627-30 (1971)(Where codefendant of petitioner took stand at joint trial in his own defense, denied making an alleged out-of-court statement implicating petitioner, and proceeded to testify favorably to petitioner concerning underlying facts, petitioner was denied no rights protected by Sixth and Fourteenth Amendments), *Hutchison v. Bell,* 303 F. 3d 720, 730-31 (6th Cir. 2002)(Even assuming that codefendant's civil complaint seeking to recover proceeds of life insurance policy naming defendant as beneficiary on grounds that defendant was feloniously responsible for insured's death was the equivalent of an inculpatory confession, permitting use of the complaint to impeach codefendant in defendant's capital murder trial did not violate Confrontation Clause, where the codefendant testified favorably to defendant regarding the underlying facts). Petitioner is not entitled to habeas relief on his third claim.

> **E. Claims # 4 and #5. The ineffective assistance of counsel/prosecutorial misconduct claims.**

In his fourth claim, petitioner contends that he was deprived of the effective assistance of counsel because his counsel failed to object to various forms of prosecutorial misconduct which he raises in his fifth claim. For purposes of judicial economy, this Court will address petitioner's prosecutorial misconduct claim along with

14

his ineffective assistance of counsel claim. *See Millender v. Adams,* 187 F. Supp. 2d 852, 874 (E.D. Mich. 2002).

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-56 (6th Cir. 1993). In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Id.;See also Payne v. Smith,* 207 F. Supp. 2d 627, 648 (E.D. Mich. 2002).

Petitioner first claims that the prosecutor introduced Geisha Garner's prior inconsistent statement to the police as substantive evidence under the guise of offering it only as impeachment evidence.

Under Michigan law, evidence of a witness' prior inconsistent statement may be admitted to impeach a witness even though the statement tends directly to inculpate the defendant. *Cathron v. Jones,* 190 F. Supp. 2d 990, 999 (E.D. Mich. 2002)*(citing People v. Kilbourn*, 454 Mich. 677, 682; 563 N.W.2d 669 (1997)); See also M.R.E. 613. An

15

exception to that rule set is that the impeachment should be disallowed when (1) the substance of the statement purportedly used to impeach the credibility of the witness is relevant to the central issue of the case, and (2) there is no other testimony from the witness for which his credibility was relevant to the case. *Kilbourn,* 454 Mich. at 683 (*citing People v. Stanaway*, 446 Mich. 643; 521 N.W.2d 557 (1994)).

In the present case, the Michigan Court of Appeals rejected petitioner's claim, finding that Garner's prior statement to the police was admissible to impeach her credibility, because it was relevant to a central issue in the case, namely, petitioner's identification as the shooter. There was also additional testimony elicited for which Garner's credibility was relevant, because Garner testified regarding the nature of the party and how the shootings took place and this testimony was in direct conflict with Newell's testimony. *Borthwell,* Slip. Op. at * 3.

The Michigan Court of Appeals further found that to the extent that the prosecutor attempted to use Garner's prior inconsistent statement as substantive evidence, and not merely for impeachment, any potential prejudice was alleviated by the trial court's instruction to the jurors that Garner's prior unsworn statement was to be considered solely for the purpose of determining the credibility of the witness and further instructed the jurors that the statements of the attorneys were not to be considered as evidence. Because the jury was properly instructed that the prior inconsistent statement was to be used solely for impeachment, the Michigan Court of Appeals concluded that there was no error. *Id.* at * 4.

The use of a witness' prior inconsistent statement as substantive evidence, and not merely for impeachment purposes, is not an error of constitutional dimension. *See Isaac v. United States,* 431 F. 2d 11, 15 (9th Cir. 1970). In the present case, any possible use of Garner's prior inconsistent statement by the prosecutor as substantive evidence did not render petitioner's trial fundamentally unfair, in light of the trial court's instruction to the jury that the prior inconsistent statements could only be used for impeachment purposes and not to prove the truth of the matter asserted, *See Christopherson v. Boone,* 49 Fed. Appx. 257, 261-62 (10th Cir. 2002), as well as the fact that the jurors were instructed that the lawyers' statements and arguments were not evidence. *See Adams v. Holland*, 168 Fed. Appx. 17, 20 (6th Cir. 2005). Simply put, "[T]he prosecutor's use of the statement in argument did not transmute the statement's evidentiary use from impeachment to substantive evidence of guilt." *Id.* at 21.

Petitioner next contends that the prosecutor engaged in improper argument by arguing that petitioner had fled the state after the shooting, even though the trial court had previously ruled that there was insufficient evidence to instruct the jury on the issue of flight. The Michigan Court of Appeals rejected this claim, finding that the prosecutor's comment was a proper response to defense counsel's argument that the prosecutor's failure to produce the murder weapon raised a reasonable doubt, as the prosecutor was merely commenting as to why the weapon could not be found. *Borthwell,* Slip. Op. at * 5.

In reviewing whether a prosecutor's comments constitute reversible error, it is

appropriate to consider whether, and to what extent, a prosecutor's improper argument is invited by defense counsel's statements. *See United States v. Jacobs,* 244 F. 3d 503, 508 (6th Cir. 2001). In the present case, defense counsel's argument concerning the prosecution's failure to recover the murder weapon invited the prosecutor to comment upon petitioner's flight from the state, even though the trial court had previously refused to give an instruction on flight. Because the prosecutor's remarks were a fair response to defense counsel's argument, the prosecutor did not engage in misconduct.

The Court will likewise reject petitioner's ineffective assistance of counsel claim. To prevail on his ineffective assistance of counsel claim, petitioner must show that the state court's conclusion regarding his claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron,* 190 F. Supp. 2d at 996. *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *See Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001). Because the prosecutor's conduct was not improper, counsel's failure to object to the prosecutor's comments and questions was not

18

ineffective assistance of counsel. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 866 (E.D. Mich. 2003). Petitioner cannot likewise show that counsel was ineffective for failing to object to the prosecutor's conduct, in light of the fact that the Michigan Court of Appeals found on direct appeal that there was no prosecutorial misconduct. *See Finkes v. Timmerman-Cooper,* 159 Fed. Appx. 604, 611 (6th Cir. 2005)*; Campbell v. United States,* 266 F. Supp. 2d 587, 589-90 (E.D. Mich. 2003).

### IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. A district court has the power to deny a certificate of appealability *sua sponte*. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a

federal constitutional right with respect to any of the claims. The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d at 798.

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

                                      s/John Corbett O'Meara
                                      United States District Judge

Date: May 15, 2008

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, May 15, 2008, by electronic and/or ordinary mail.

                                      s/William Barkholz
                                      Case Manager